Randy J. Cox
BOONE KARLBERG P.C.
201 West Main, Suite 300
P.O. Box 9199
Missoula, MT 59807-9199
Telephone: (406) 543-6646
Facsimile:  (406) 549-6804
rcox@boonekarlberg.com

Robert E. Johnston
HOLLINGSWORTH LLP
1350 I Street, N.W.
Washington, D.C. 20005
Telephone: (202) 898-5800
Facsimile:  (202) 682-1639
rjohnston@hollingsworthllp.com

*Attorneys for Defendants Monsanto
Company and Kerry Yates*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| TERRY KNOX and CAROLYN "COKE" KNOX,<br><br>Plaintiffs,<br><br>v.<br><br>MONSANTO COMPANY and KERRY YATES,<br><br>Defendants. | CV 19–36–GF–BMM<br><br>**BRIEF IN SUPPORT OF DEFENDANT KERRY YATES'S MOTION FOR JUDGMENT ON THE PLEADINGS** |

## INTRODUCTION

Plaintiffs Terry Knox and Carolyn "Coke" Knox (collectively, "Plaintiffs") allege that exposure to Monsanto Company's ("Monsanto") Roundup herbicide caused Terry Knox ("Mr. Knox") to develop non-Hodgkin's lymphoma ("NHL"). However, in a flagrant attempt to avoid federal jurisdiction, Plaintiffs have sued Kerry Yates ("Mr. Yates"), a Monsanto account manager for the region of Montana where Plaintiffs reside, in his individual capacity. Mr. Yates is only mentioned in 4 of the 118 paragraphs in the Complaint, and none of those 4 paragraphs allege any specific actions taken by him relative to the plaintiffs. One paragraph makes a conclusory allegation that Mr. Yates was "aware" of Mr. Knox's use of Roundup® and failed to warn him of any dangers, but alleges no facts to support those conclusory allegations. Two other paragraphs make identical boilerplate allegations that Mr. Yates "marketed, promoted, and warrantied" the Roundup Mr. Knox used. *See* Compl., ¶¶ 3, 5, 62, 70.

Plaintiffs' Complaint against Mr. Yates should be dismissed. The Complaint asserts the following claims against "defendants," collectively: Strict Product Liability—Design Defect, Strict Liability—Failure to Warn, Negligence, Breach of Express Warranty, Breach of Implied Warranty of Merchantability, and Loss of Consortium. Montana law does not extend strict

liability claims to the employees of product manufacturers. *See* Mont. Code Ann. § 27–1–719; *Malcolm v. Evenflo Co.*, 217 P.3d 514, ¶ 32 (Mont. 2009); *Kelly v. General Motors Corp.*, 487 F. Supp. 1041, 1044 (D. Mont. 1980). Likewise, it does not hold corporate employees liable for alleged breach of warranty absent a personal contract. *See Weaver v. Tri-County Implement, Inc.*, 311 P.3d 808, ¶¶ 12–17 (Mont. 2013). Most importantly, Montana law does not hold employees liable for any alleged negligence stemming from acts taken in the course of their employment absent a few exceptions, none of which apply here. *See e.g. Philips v. Mont. Ed. Ass'n*, 610 P.2d 154, 158 (Mont. 1980).

In support of their claims against Mr. Yates, Plaintiffs rely on a few conclusory statements regarding Mr. Yates's actions involving Roundup, but fail to state facts sufficient to meet their pleading burden. They have not alleged any facts that fit into the exceptions to the general position of not holding employees liable for warranty and negligence claims. Likewise, they have not alleged facts sufficient to justify ignoring established limits on strict liability. Therefore, Plaintiffs fail to allege facts sufficient to support a cognizable legal theory, and pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the claims against Mr. Yates should be dismissed.

## LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when taking the allegations of a complaint as factually correct, the moving party is entitled to judgment as a matter of law." *Johnson v. Dodson Pub. Sch., Dist. No. 2-A(C),* 463 F. Supp. 2d 1151, 1155 (D. Mont. 2006) (internal citations omitted). A Rule 12(c) motion is "functionally identical" to a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, and the same legal standard "applies to motions brought under either rule. *Cafasso, United States ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011). Rule 12(b)(6) calls for dismissal of a plaintiff's claims when the complaint either: (1) lacks a cognizable legal theory, or (2) fails to allege sufficient facts to support a cognizable legal theory. *See Summers v. 21st Century N. Am. Ins. Co.*, 2015 WL 8041455, at *2 (D. Mont. Dec. 4, 2015) (internal citations omitted).

To survive a motion to dismiss and satisfy Rule 8(a)(2)'s pleading requirements (the standard applicable to this motion), a plaintiff must plead "enough facts to state a clam to relief that is plausible on its face" with sufficient specificity to "give the defendant fair notice of what . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545,

570 (2007) (citation and quotation marks omitted). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). It requires a plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *Twombly*, 550 U.S. at 555. "Conclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Strizic v. Northwestern Corp.*, 2015 WL 1275404, at *1 (D. Mont. Mar. 19, 2015) (citations omitted).

## ARGUMENT

### I. Plaintiffs Have Failed to Plead Facts Sufficient to Support a Negligence Claim Against Mr. Yates.

Plaintiffs' Complaint lacks sufficient factual detail to state a plausible negligence claim against Mr. Yates. First, Plaintiffs have failed to present an adequate factual basis for holding Mr. Yates—a Monsanto employee at all relevant times acting within the course and scope of his employment—individually liable. Second, Plaintiffs have not alleged and cannot prove that Mr. Yates's actions caused their injuries. Indeed, Mr. Yates has never met Mr. Knox, let alone breached a legal duty resulting in injury to him. Plaintiffs' negligence claim against Mr. Yates must be dismissed.

### A. Plaintiffs Have Failed to Plead Facts Sufficient to Support Liability Against a Corporate Employee Such as Mr. Yates.

Plaintiffs' Complaint is devoid of factual allegations of specific conduct by Mr. Yates that would plausibly support a negligence claim. The only allegations specific to Mr. Yates are a generic claim that he failed to warn Mr. Knox of any dangers associated with Roundup, and a twice-repeated formulaic statement that he "marketed, promoted, and warrantied Roundup used by Plaintiff." Compl., ¶¶ 3, 62, 70. Other than those two generic allegations, Plaintiffs merely attempt to associate Mr. Yates with Monsanto's alleged misdeeds by generally referencing "Defendants" throughout the pleading. Plaintiffs allege no specific facts showing that Mr. Yates: (1) acted outside the scope of his employment with Monsanto; (2) undertook any actions against the best interest of Monsanto for his own pecuniary benefit; or (3) acted with malice or ill-will towards them.

Under Montana law, a corporate employee may not be held liable for actions taken on behalf of his employer in the course of his employment. *Philips*, 610 P.2d at 158. The only way a plaintiff can pierce this liability shield is by showing that the employee-defendant acted in his own financial interest as opposed to that of his employer, or with intent to harm the particular plaintiff. *Id.*

This Court recognized as much in *Strizic v. Northwestern Corp.*, 2015 WL 1275404, at *2 (D. Mont. Mar. 19, 2015), holding that failure to allege specific facts against an employee-defendant sufficient to warrant piercing the corporate shield constitutes a failure to state a claim upon which relief can be granted, and is grounds for dismissal. In *Strizic*, a former Northwestern Corporation employee brought suit against his employer and his former manager in her individual capacity for denying a disability claim. *Id.* at *1. The plaintiff's complaint was devoid of any factual allegations that the employee-defendant was acting outside the scope of her employment, or against the best interest of the company for her own pecuniary benefit. *Id.* at *2. The Court held that a complaint devoid of such allegations did not meet the plausibility standard required by pleadings in federal court, and granted the employee-defendant's motion to dismiss for a failure to state a claim. *Id.* at *3[1]; *see also Flagstone Dev. Ltd. Liab. Co. v. Joyner*, 2010 WL 1780093 at *4 (D. Mont. Apr. 29, 2010) ("Pursuant to Montana law, the Montana Supreme Court has consistently held that dismissal against an employee for allegedly tortious conduct is appropriate when the employee was acting as an agent within the scope of his or her employment with the principal. Montana law provides that the principal or

---

[1] Notably, the *Strizic* court further found that while the complaint did not satisfy the heightened pleading standards of federal court, it would have reached the same outcome under the more lenient Montana notice-pleading standard. *Strizic*, 2005 WL 1275404 at *3.

employer is potentially liable for the conduct, not the agent or employee individually.").

Plaintiffs' Complaint here is analogous to that of the *Strizic* plaintiff. There are no specific allegations of any conduct by Mr. Yates that would support piercing the Montana employee liability shield. Plaintiffs do not allege that Mr. Yates engaged in any actions beyond the duties of his job as a Monsanto employee, acted in his own interest against that of the company, or acted with any ill-will towards them. Instead Plaintiffs rely on a few threadbare conclusory allegations about Mr. Yates's involvement with Roundup (though not with Plaintiffs). The pleading standards established by *Iqbal* and *Twombly* require specific factual allegations sufficient to support a cognizable legal theory of liability. Plaintiffs' brief formulaic statements, devoid of specific facts, do not meet this standard. Plaintiffs have therefore failed to show that a plausible claim against Mr. Yates exists. As such, the claims against Mr. Yates should be dismissed under Rule 12(c).

### B. Plaintiffs Have Not Alleged and Cannot Prove that Mr. Yates's Actions Caused Them Harm.

A review of the nearly five pages of the Complaint outlining Plaintiffs' negligence claim reveals a fatal flaw—even assuming the truth of the allegations, the fact is Mr. Yates neither personally engaged in the actions described in Count III, nor has he ever personally encountered or communicated

with Plaintiffs.  (*See* Doc. 1–2, passim.) As noted above with respect to the corporate shield, Plaintiffs cannot meet their obligation to sufficiently plead causation with respect to Mr. Yates by simply referencing plural "Defendants." Absent a demonstrable causal connection between Mr. Yates's conduct and Plaintiffs' alleged injuries, Plaintiffs' negligence claim must be dismissed.

It is well-established under Montana law that "[a] defendant's negligence is the direct cause of the plaintiff's injury if there is an uninterrupted chain of events from the negligent act to the plaintiff's injury." *Fisher v. Swift Transp. Co.*, 181 P.3d 601, ¶ 36 (Mont. 2008) (citations omitted). "In such cases, proof of causation is satisfied by proof that a party's conduct was a cause-in-fact of the damage alleged." *Id*. (citations and internal quotation marks omitted). "A party's act is the cause-in-fact of an event if the event would not have occurred but for that conduct." *Id*. (citations and internal quotation marks omitted).

Even assuming the absence of an intervening cause,[2] there simply is no connection between the actions Mr. Yates undertook (and continues to undertake) as an employee of Monsanto and Plaintiffs' injuries. As Mr. Yates swore to in his May 10, 2019 declaration, he "provide[s] <u>support to distributors and retailers</u> of Bayer/Monsanto products regarding <u>product performance issues</u>." (Doc 1–2 at ¶ 2 (emphasis added).) He does not and never has sold

---

[2] This affirmative defense has been pled and preserved in Defendants' Answer and, if necessary, will be explored in more detail later in the case.  (*See* Doc. 2 at 22.)

Monsanto products; solicited sales, taken orders, or delivered Monsanto products; accepted payment for Monsanto products; manufactured or packaged Monsanto products; or personally tested Monsanto products. (*Id.*, passim.) Mr. Yates consults with distributors and retailers regarding how to use Monsanto products in the field, so that the distributors and retailers are able to answer their customers' questions about the products. He has never met Mr. Knox, let alone promoted Roundup to Mr. Knox under the false promise of its safety.

Plaintiffs entirely ignore the above realities. Their Complaint lacks sufficient factual detail specific to Mr. Yates to state a facially plausible negligence claim against him. *Twombly*, 550 U.S. at 545, 570. Mr. Yates did not cause Roundup products to be sold or marketed to Mr. Knox, nor did he have a legal duty of reasonable care with respect to "design, research, manufacture, marketing, advertisement, supply, promotion, packaging, sale, [or] distribution of Roundup products"—these were not his job duties, and he played no part in any decision associated with these functions. (Doc. 6 at ¶¶ 76–78.) Mr. Yates had no knowledge of the alleged dangers Plaintiffs insist exist with respect to Roundup products. (*Id.* at ¶¶ 79–83.) Mr. Yates instead has knowledge (provided to him by his employer) of how these products perform in the field, and his job was to convey that knowledge to the people and businesses that sold Roundup products to end users. Mr. Yates had nothing to do with laboratory

testing or scientific study of Roundup products or their constituent parts; never discovered but then concealed information pertaining to either; nor could have foreseen that Mr. Knox would allegedly be injured by Roundup. (*Id.* at ¶¶ 84–88.) Plaintiffs have, tellingly, never alleged specific tortious conduct by Mr. Yates directed to Plaintiffs.

Mr. Yates's role as a Monsanto employee is simple. By way of example, when a local ag products retailer calls Mr. Yates with a question about application rates or mixture concentrations or some other product performance issue, Mr. Yates provides a practical answer based on his knowledge of the product. As a service to the two local Monsanto product distributors in Denton, Mr. Yates occasionally gave product presentations or answered specific customer questions about product performance issues. However, as it relates to causation, there is no allegation that Mr. Yates spoke or consulted directly with Mr. Knox. Thus, Plaintiffs cannot plausibly assert that their alleged injuries "would not have occurred but for [Mr. Yates's] conduct"—his "conduct" was never directed toward Plaintiffs. *Fisher*, ¶ 36 (citations omitted).

Mr. Yates is entirely removed from corporate-level product formulation, testing, promotion, and sales decisions—precisely the decisions raised in Plaintiffs' Complaint as the basis for their negligence claim. Mr. Yates and his employer are not synonymous, and pretending they are in order to defeat

diversity falls far short of federal pleading requirements. Because Plaintiffs fail to distinguish between Mr. Yates's conduct and the alleged conduct of Monsanto, and absent any allegations pertaining specifically to Mr. Yates, the Court should dismiss Plaintiffs' negligence claim as it relates to Mr. Yates.

## II. Montana Law Does Not Impose Strict Liability On the Employees of Manufacturers of Alleged Defective Products.

Counts I and II of Plaintiffs' Complaint assert strict product liability claims for design defect and failure to warn. *See* Compl., ¶¶ 59–74. These claims are governed by the Montana product liability statute at Montana Code Annotated § 27–1–719, which establishes a cause of action in strict liability against sellers of alleged defective products. *See also Winters v. Country Home Prods., Inc.*, 654 F. Supp. 2d 1173, 1180, 1182 (D. Mont. 2009). Strict product liability is designed to place the risk of loss on the manufacturer/seller of a product because it is in the best position to insure product safety. *Malcolm*, ¶ 32 (*citing Sternhagen v. Dow Co.*, 935 P.2d 1139, 1146 (Mont. 1997)). Because strict product liability is designed to promote product safety, the law is focused solely on the condition of the product and not the conduct of a person. *See Kelly*, 487 F. Supp. at 1044 (*quoting Kossifos v. Louden Machinery Co.*, 22 Ill.App.3d 587, 317 N.E.2d 749 (1974)). It is also designed to allocate the costs of injury caused by a product to the party best equipped to handle significant expense. *Sternhagen*, 935 P.2d at 1142–43.

Plaintiffs seek to hold Mr. Yates liable for the condition of an allegedly defective product simply because of his alleged involvement in the chain of sale by "market[ing], promot[ing], and warranty[ing] Roundup that was used by Terry Knox." Compl., ¶¶ 62, 70. As evidenced by Montana courts' discussion of the doctrine of strict product liability, Plaintiffs' attempt to hold Mr. Yates personally responsible is completely antithetical to the purpose of strict product liability. The law is designed to hold product manufacturers responsible for the condition of the products that they place into the stream of commerce and for the information and warnings they provide to the public about the safety of their products. It was not designed to extend liability to individual employees for their downstream, incidental involvement with an alleged defective product.

While there is no Montana law directly on point on this issue, based on policy reasons similar to those expressed by Montana courts, other courts have found that employees of a manufacturer cannot be liable under a theory of strict liability. *See e.g. Altman v. HO Sports Co.*, 2009 WL 2590425, at \*\*1, 3 (E.D. Cal. Aug. 20, 2009) (finding that a sales representative was fraudulently joined as a sham defendant and denying a plaintiff's motion to remand because a mere employee of a manufacturer cannot be liable under strict products liability). The *Altman* court noted that the public policy considerations of strict product liability (enhancing public safety, maximizing protection of plaintiffs, and

splitting costs among defendants) would not be served by holding an employee defendant strictly liable, even if the employee "could technically be viewed as a 'link in the chain' in getting the product to the consumer market." *Id*. at *3 (*quoting Arriaga v. CitiCapital Commercial Corp.*, 85 Cal. Rptr. 3d 143, 149 (Cal. Ct. App. 2008)).

Additionally, while the *Kelly* court made clear that strict product liability is not focused on the conduct of a person, it should be noted that Plaintiffs have not set forth with any specificity any allegations against Mr. Yates that would support a plausible strict product liability claim against him. *See Dacosta v. Novartis AG*, 2002 U.S. Dist. LEXIS 21313, at **17–21 (D. Or. Mar. 1, 2002) (holding that a sales person was "merely an employee of [the pharmaceutical company], the seller of the product and, therefore, is not strictly liable for the drugs that he promotes to physicians," and "[a]lthough [the employee] received some benefit from sales of the drugs that he promoted in the form of bonuses and job security, those benefits were not sufficient to confer on [him] any ownership in or control over those products."). Plaintiffs have not alleged that he manufactured glyphosate-containing herbicides or had any control or involvement in the manufacturing or distribution processes. Likewise, there are no allegations that Mr. Yates had any ability to affect the design, packaging, or labeling of any glyphosate-containing herbicides. There are no allegations that

Mr. Yates had any control over the safety warnings associated with glyphosate-containing herbicides or had any independent knowledge about alleged dangers of the product beyond what he was told by his employer. Plaintiffs do not allege that Mr. Yates had any ability to personally affect the safety of any glyphosate-containing herbicide in any way. Because Plaintiffs have not and cannot plead any facts that would plausibly support a claim for strict products liability against Mr. Yates, and pursuant to the above pertinent case law, those claims must be dismissed.

### III. Plaintiffs Have Not Presented A Plausible Breach of Warranty Claim Against Mr. Yates.

In Counts IV and V of the Complaint, Plaintiffs assert claims for Breach of Express Warranty and Breach of Implied Warranty against both Monsanto and Mr. Yates. Under Montana law a breach of express warranty claim is to be analyzed under contract law. *See Woodahl v. Matthews*, 639 P.2d 1165 (Mont. 1982). Similarly, a claim for breach of implied warranty is a contract-based claim. *See e.g. Chandler v. Madsen*, 642 P.2d 1028, 1034 (Mont. 1982) (". . . breach of implied warranty is a breach of contract . . .").

The fact that Plaintiffs' warranty claims are analyzed under contract law is important because Montana law is well-settled that an employee or other agent of a corporation cannot be liable for an alleged breach of contract absent

some contract between the plaintiff and that employee <u>personally</u>. *Weaver*, ¶¶ 12–17.

In *Weaver*, the sole shareholder of an LLC was countersued in his individual capacity for the LLC's alleged breach of contract in a dispute over auto repairs. *Id.*, ¶¶ 3–7. In the absence of an agreement made by and with the shareholder personally, the court refused to extend liability to the shareholder defendant in his individual capacity. *Id.*, ¶¶ 14–17. In so ruling the court stated, "a member or manager, as an agent of the company, is not liable for the debts, obligations, and liabilities of the company simply because of the agency." *Id.*, ¶ 15 (*quoting* Comments to Mont. Code Ann. § 35–8–304). This is exactly the situation here. The entirety of Plaintiffs allegations against Mr. Yates stem from his employment at Monsanto. Plaintiffs have not alleged that they entered into any contract with Mr. Yates in his individual capacity. As such, they have not alleged a plausible breach of warranty claim against him.

The conclusion that Mr. Yates may not be held personally liable for breach of warranty is also required under the Montana Uniform Commercial Code, which limits implied warranty claims to the merchant-seller. *See* Mont. Code Ann § 30–2–314 (a "warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."). Although no Montana case law was found on point, court

after court to address the issue has held that warranty claims are only properly brought against the party that sold the product—not against the individuals who represent or work for the manufacturer. *See e.g., Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, at *7 (M.D. Ala. Dec. 19, 2005) (sales representative could not be held liable for breach of implied warranty because "a breach of warranty claim is viable only against the 'seller' of the goods"); *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 286 (S.D.N.Y. 2001) (sales representatives were fraudulently joined because, *inter alia*, no warranty claim could possibly be asserted against them insofar as they "were not 'sellers' of the product for purposes of warranty; the 'seller who impliedly warranted the merchantability of Rezulin was the pharmaceutical manufacturer"); *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, F. Supp. 2d 414, 425 (E.D. Pa. 2002) (removal proper where plaintiffs failed to cite "any authority for the proposition that a sales representative, as opposed to the manufacturer of the product he or she was selling, would ever be liable as the warrantor of the product . . . [o]n the contrary, sales representatives are not considered 'sellers' . . . , but rather, employees of the businesses who are sellers") (internal quotation marks and citation omitted); *Allgood v. R.J. Reynolds Tobacco Co.*, 80 F.3d 168, 171 (5th Cir. 1996) ("Even where a party has promoted a product, and made promises regarding that product, if the party

is not the actual seller, a claim for breach of warranty will not lie."); *Chism v. CNH Am. LLC*, 2008 U.S. Dist. LEXIS 12639, at \*\*6–7 (E.D. Ark. Feb. 20, 2008) ("for purposes of the warranty provisions of the Uniform Commercial Code . . . employees who sell products to consumers on behalf of their employers are not in the business of selling those products and therefore are not suppliers or sellers"). The same conclusion is required under the Montana Uniform Commercial Code.

## CONCLUSION

For the reasons set forth herein, Plaintiffs have failed to allege facts sufficient to show that they have a plausible claim against Kerry Yates as required by Rule 8(a)(2) and the *Iqbal* and *Twombly* courts. The bare bones allegations of Plaintiffs' claims against Mr. Yates made simply to defeat diversity do not satisfy the pleading standards of this Court and should be dismissed.

DATED this 29th day of May, 2019.

/s/ Randy J. Cox
Randy J. Cox
BOONE KARLBERG P.C.
*Attorney for Defendants Monsanto Company and Kerry Yates*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing brief, excluding the caption, certificate of compliance, and signature block, contains 3,965 words, as calculated by the word-processing software used to draft the brief, and utilizes a proportionately-spaced Times New Roman font of 14 points.

DATED this 29th day of May, 2019.

            /s/ Randy J. Cox
            Randy J. Cox
            BOONE KARLBERG P.C.
            *Attorney for Defendants Monsanto Company and Kerry Yates*